**Stanley A. ANTON, Plaintiff,**

v.

**Glen LEHPAMER, et al., Defendants.**

**No. 81 C 36.**

United States District Court,
N.D. Illinois, E.D.

April 11, 1984.

---

Miriam F. Miquelon and Kris Daniel, Miquelon, Cotter & Daniel, Chicago, Ill., for plaintiff.

Peter V. Baugher, Paul E. Dengel and Sally F. Rogers, Schiff, Hardin & Waite, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Stanley Anton ("Anton") originally filed suit under 42 U.S.C. § 1983 ("Section 1983") against:

1. Downers Grove police officers Glen Lehpamer ("Lehpamer"), Joseph Degand ("Degand") and William Moore ("Moore"), charging their use of excessive force in effecting Anton's arrest; and

2. DuPage County Jail law enforcement officers Louis Cook ("Cook") and Michael Blazek ("Blazek") and DuPage County Sheriff Richard Doria ("Doria"), asserting their failure to give Anton adequate medical treatment for an injury sustained during the arrest.

Cook and Doria (on May 13, 1982) and Blazek (on December 30, 1982) extricated themselves as defendants via the summary judgment route. Now Lehpamer, Degand and Moore also move for summary judgment under Fed.R.Civ.P. ("Rule") 56. For the reasons stated in this memorandum opinion and order, their motion is denied.

### Facts [1]

On December 21, 1978 Lehpamer, Degand and Moore responded to a dispatch call that an intoxicated man had created a disturbance in his home and had left carrying a .45 caliber gun.[2] Moore saw Anton walking down the street with his hands in his jeans pockets. Moore aimed his police vehicle spotlight at Anton and ordered him to stop walking. As the officers arrived on the scene, all three pointed weapons at Anton: Moore his service revolver, Degand a shotgun and Lehpamer his service revolver.

Lehpamer ordered Anton to take his hands out of his pockets and raise them over his head. After Anton had been told to do so more than once, he raised his hands over his head and then lowered them. Moore grabbed Anton from behind and wrestled him to the ground. Lehpamer assisted in restraining Anton until he was handcuffed. Then the officers re-

---

1. This recitation, drawn from the parties' pleadings and the Feb. 25, 1983 Proposed Final Pretrial Order, implies no findings of fact. No other evidentiary material has been tendered by the parties.

2. Anton's wife Hazel, fearing Anton might shoot himself, had called the police and given them Anton's description.

moved the .45 caliber gun from the back of Anton's pants belt.

Anton claims defendants then started to drag him to the police vehicle without permitting him to regain an upright position. On reaching the police vehicle Lehpamer stepped on Anton's left leg behind the knee, causing an injury that required him to undergo surgery to repair torn ligaments.

*Adequacy of an Available State Remedy*

Defendants' entire argument is that for reasons marked out in *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), the adequacy of an available state law tort claim bars Anton's suit here. *Parratt* involved a prisoner's Section 1983 claim against state officials for their negligence in losing a hobby kit paid for with the prisoner's own funds. Justice Rehnquist (speaking for the Court, through the proliferation of other opinions clouds the precise contours of the Court's holdings) first said the prisoner had satisfied three of the four prerequisites to establish a violation of procedural due process (451 U.S. at 536–37, 101 S.Ct. at 1913–14, footnote omitted):

> Unquestionably, respondent's claim satisfies three prerequisites of a valid due process claim: the petitioners acted under color of state law; the hobby kit falls within the definition of property; and the alleged loss, even though negligently caused, amounted to a deprivation. Standing alone, however, these three elements do not establish a violation of the Fourteenth Amendment. Nothing in that Amendment protects against all deprivations of life, liberty, or property by the State. The Fourteenth Amendment protects only against deprivations "without due process of law." *Baker v. McCollan,* 443 U.S. [137], at 145, 99 S.Ct. [2689], at 2695 [61 L.Ed.2d 433]. Our inquiry therefore must focus on whether the respondent has suffered a depriva-

tion of property without due process of law. In particular, we must decide whether the tort remedies which the State of Nebraska provides as a means of redress for property deprivations satisfy the requirements of procedural due process.

After extended discussion, Justice Rehnquist concluded "due process" had been satisfied there because (1) Nebraska provided a tort remedy adequate to redress the deprivation and (2) no pre-deprivation hearing was possible (*id.* at 541, 101 S.Ct. at 1916).

■ *Parratt*—which after all dealt with a deprivation of *property* caused by *negligence*—quickly ignited a controversy over whether its analysis extended as well to deprivations of *liberty* and to *intentional* acts. At least in this Circuit, the *Parratt* approach does apply to deprivations of liberty interests. *State Bank of St. Charles v. Camic,* 712 F.2d 1140, 1147 (7th Cir.), *cert. denied,* — U.S. —, 104 S.Ct. 491, 78 L.Ed.2d 686 (1983); *Eberle v. Baumfalk,* 524 F.Supp. 515, 517–18 (N.D.Ill. 1981).

But as to whether *Parratt*'s treatment extends to intentional acts, the courts differ sharply. Contrast *McCrae v. Hankins,* 720 F.2d 863, 869–70 (5th Cir.1983) (*Parratt* does not apply to intentional deprivations of property) and *Brewer v. Blackwell,* 692 F.2d 387, 394–95 & n. 11 (5th Cir.1982) (*Parratt* does not apply to intentional deprivations of liberty interests) with *Keniston v. Roberts,* 717 F.2d 1295, 1301 (9th Cir.1983) (burden is on defendants to show a pre-deprivation hearing is impracticable to guard against an intentional deprivation implementing official policy). Our own Court of Appeals has been less than clear on this score. It has on occasion applied *Parratt* to intentional deprivations [3] and has at other times distinguished intentional deprivations from negligent actions in ap-

---

**3.** *Wolf-Lillie v. Sonquist,* 699 F.2d 864, 871 (7th Cir.1983) (intentional deprivation of property); *Flower Cab Co. v. Petitte,* 685 F.2d 192, 193 (7th Cir.1982) (intentional deprivation of property);

*Ellis v. Hamilton,* 669 F.2d 510, 515 (7th Cir.), *cert. denied,* 459 U.S. 1069, 103 S.Ct. 488, 74 L.Ed.2d 631 (1982) (intentional deprivation of a liberty interest).

plying *Parratt*,[4] but all its excursions into the area have been undertaken without much discussion or analysis.

### Section 1983 Claims Post-Parratt

Of course Anton does not complain that he should have been given a hearing before excessive force was used in arresting him. Nor does he say no state law tort remedy is at all available to redress the alleged assault. Rather Anton's claim rests on the premise some actions—intentional encroachments on liberty—are constitutionally prohibited by the Fourteenth Amendment no matter what procedure is used to redress the wrong.

Justice Holmes observed in *New York Trust Co. v. Eisner*, 256 U.S. 345, 349, 41 S.Ct. 506, 507, 65 L.Ed. 963 (1921):

> Upon this point a page of history is worth a volume of logic.

Nearly a quarter century has passed since *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961) (only Justice Frankfurter dissenting) taught "under color" of state law—the talismanic phrase in Section 1983—was *not* intended to be limited, in providing a remedy under federal law, only to official conduct that could not be redressed in state law. *Monroe* did so in the context of the classic [5] situation of an intentional tort by police officers. It relied on the then twenty-year-old doctrine of *United States v. Classic*, 313 U.S. 299, 61 S.Ct. 1031, 85 L.Ed. 1368 (1941), reinforced by *Screws v. United States*, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945). And each of those cases, too, had dealt with *intentional* misdeeds of state officers.

Whatever *Parratt* may mean (see this Court's early doubts as expressed in *Eberle v. Baumfalk*, 524 F.Supp. at 518 n. 4), from the outset one of the most disturbing aspects of Justice Rehnquist's opinion has been the potential for its expansion, by the seemingly faultless logic of syllogistic analysis, to bar federal relief for the very wrongs—the intentional deprivation of rights to liberty—that have so long been viewed as the central focus of Section 1983. *Screws* said (325 U.S. at 112–13, 65 S.Ct. at 1040–41), in language quoted in *Monroe*, 365 U.S. at 184–85, 81 S.Ct. at 482–83:

> The construction given § 20 [18 U.S.C. § 242, the criminal counterpart to Section 1983] in the *Classic* case formulated a rule of law which has become the basis of federal enforcement in this important field. The rule adopted in that case was formulated after mature consideration. It should be good for more than one day only. We do not have here a situation comparable to *Mahnich v. Southern S.S. Co.*, 321 U.S. 96 [64 S.Ct. 455, 88 L.Ed. 561], where we overruled a decision demonstrated to be a sport in the law and inconsistent with what preceded and what followed. The *Classic* case was not the product of hasty action or inadvertence. It was not out of line with the cases which preceded. It was designed to fashion the governing rule of law in this important field. We are not dealing with constitutional interpretations which throughout the history of the Court have wisely remained flexible and subject to frequent re-examination. The meaning which the *Classic* case gave to the phrase "under color of any law" involved only a construction of the statute. Hence if it states a rule undesirable in its consequences, Congress can change it. We add only to the instability and uncertainty of the law if we revise the meaning of § 20 [18 U.S.C. § 242] to meet the

---

**4.** *Jackson v. City of Joliet*, 715 F.2d 1200, 1202 (7th Cir.1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 1325, 79 L.Ed.2d 720 (1984) (intimating intentional torts are actionable under Section 1983); *State Bank of St. Charles*, 712 F.2d at 1144 n. 1, 1147–48 (intimating *Parratt* does not apply to intentional actions); *Vail v. Board of Education of Paris Union School District No. 95*, 706 F.2d 1435, 1440–41 (7th Cir.), *cert. granted*, —— U.S. ——, 104 S.Ct. 66, 78 L.Ed.2d 81 (1983)

(finding *Parratt* inapplicable to intentional deprivation of property); *Madyun v. Thompson*, 657 F.2d 868, 873 (7th Cir.1981) (failing to apply *Parratt* to intentional deprivation of property).

**5.** No pun is intended, though *United States v. Classic* was indeed one of the foundation stones for *Monroe*.

exigencies of each case coming before us.

Congress did not act after *Screws* to change that rule. *Monroe*, 365 U.S. at 186, 81 S.Ct. at 483; and see Harlan, J., concurring, *id.* at 192, 81 S.Ct. at 486–87. Congress has not so acted in the twenty-odd years since *Monroe*. If principles of stare decisis are to be abandoned because the claimed logic of *Parratt*'s extension requires it, let the Supreme Court do so. This Court will not.

■ This does not mean this Court subscribes to the views of those that find Justice Rehnquist's opinion reconcilable with such nonextension. In that respect, as *Eberle* indicated, this Court shares the views later expressed by its colleague Judge Marshall in *Begg v. Moffitt*, 555 F.Supp. 1344, 1358–60 (N.D.Ill.1983). But if no principled distinction can in fact be made between the defendants' conduct and the plaintiffs' deprivations dealt with in *Parratt* and in this case, this Court will not apply the analysis of Justice Rehnquist's opinion to the intentional-deprivation-of-liberty situation without a clear signal from a Supreme Court majority (or from Congress by repealing Section 1983).

Like concerns have led Judge Marshall to engage, in *Begg*, in an extended exegesis of why Justice Rehnquist's procedural due process analysis does not answer the question here. On that score our Court of Appeals has not provided any guidance as to precisely what substantive rights continue to be constitutionally guaranteed, so as to be assertable via Section 1983 though other state procedures may exist. See cases collected in *Begg*, 555 F.Supp. at

1363–65 n. 60 and *State Bank of St. Charles*, 712 F.2d at 1147–48. But at a minimum it should seem the teaching of *Monroe* continues post-*Parratt* to provide Section 1983 enforcement of freedom from police officers' excessive use of force. *Bauer v. Norris*, 713 F.2d 408, 411 (8th Cir.1983); see also *Lenard v. Argento*, 699 F.2d 874, 891 (7th Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 69, 78 L.Ed.2d 84 (1983).

Indeed the Supreme Court itself has not applied Justice Rehnquist's analysis in a situation conceptually similar to the present one. *Youngberg v. Romeo*, 457 U.S. 307, 315–16, 102 S.Ct. 2452, 2458–59, 73 L.Ed.2d 28 (1982) (use of restraints on a mentally retarded patient while confined in a state institution). *Youngberg* illustrates the relevant question is not what procedures are adequate either before force is used or to redress the wrongful use of force, but rather how much force the state officer can use without overstepping the constitutional line. *Begg* persuasively argues the Justice Rehnquist analysis has no place in answering that question.

■ It has consistently been Anton's position that the precise issue in this case is whether that constitutional line was crossed.[6] Feb. 25, 1983 Final Pretrial Order, Agreed Statement of Contested Issues of Fact and Law; Anton Mem. 4; Def.R. Mem. 2. On that subject neither party has tendered any evidence at all, let alone evidence that could establish no genuine issue of material fact exists. In this circumstance, summary judgment is inappropriate under Rule 56(c).[7]

6. Contrary to defendants' assertion, whether that line has been crossed is not determined by the standard of *Rochin v. California*, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952), but by a far less stringent one: whether the force used under the circumstances of the case was reasonable. *Bauer*, 713 F.2d at 412; *Clark v. Ziedonis*, 513 F.2d 79, 83 (7th Cir.1975).

7. Anton also argued defendants' motion for summary judgment was inappropriate on the eve of trial and thus should not be considered. Anton has not shown any prejudice occasioned

by (nor any bad faith in) this motion, though it was filed a month before the scheduled trial. See *Eklund v. Hardiman*, 580 F.Supp. 410, 414 (N.D.Ill.1984). Summary judgment is an appropriate motion when it appears no issues of fact remain for trial. To bar litigants from making that motion when trial is one month away could lead to a greater waste of time than to permit the filing of a well-founded motion. In any event, Anton's request to strike the motion is moot.

*Conclusion*

Defendants' motion for summary judgment is denied. This case will remain on the calendar for early trial.