**Kenneth LeCUYER, Plaintiff,**

v.

**Steven L. WEIDENBACH, and Robert B. Benstein, Defendants.**

**No. 84 C 6729.**

United States District Court, N.D. Illinois, E.D.

April 29, 1985.

Robert Gray, Gray, Kleczak & Klelian, Joliet, Ill., for plaintiff.

Thomas J. Platt, Asst. Atty. Gen., Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

GETZENDANNER, District Judge:

This action under 42 U.S.C. § 1983 for deprivation of civil rights is currently before the court on the motion of defendants Steven L. Weidenbach and Robert B. Benstein to dismiss for failure to state a claim. Fed.R.Civ.P. 12(b)(6). For the reasons stated below, the motion is granted.

For purposes of the present motion, the court accepts the well-pleaded allegations of plaintiff's complaint as true. Plaintiff Kenneth LeCuyer is an Illinois citizen. Defendants Steven L. Weidenbach and Robert B. Benstein are conservation officers employed by the State of Illinois who were at all times pertinent to the events underlying plaintiff's complaint acting within the scope of their duties.

On October 4, 1982, at approximately 6:45 p.m., plaintiff was operating a Kawasaki motorcycle in Silver Springs State Park in Kendall County, Illinois. As he approached the Fox Road exit, defendant Benstein intentionally and without justification stopped his vehicle in front of the exit so as to block plaintiff's egress out of the park. Nonetheless, plaintiff turned onto Fox Road and proceeded east in the eastbound lane. Defendant Weidenbach then, intentionally and without justification, drove his vehicle in front of plaintiff so as

to cause a collision and inflict personal injury on the plaintiff. At no time during the course of these events did either defendant use any official lights or signals to indicate that they were attempting to stop plaintiff. Plaintiff was subsequently found guilty, after a jury trial, of reckless driving for going eastward in the westbound lane of Fox Road.

Plaintiff's complaint states that the above acts of defendants violated his first, fourth, and fourteenth amendment rights. Plaintiff has alleged no facts to suggest that defendants abridged his freedom of expression or subjected him to an unlawful search and seizure. Perhaps in recognition of this deficiency, plaintiff's brief ignores these potential claims, and argues only that the defendants deprived him of liberty without due process of law by intentionally blocking his path and causing him personal injury. Accordingly, the court confines its discussion to this latter allegation.

The defendants' principal argument for dismissal is that plaintiff has alleged no more than a common law tort for which state law provides constitutionally adequate post-deprivation remedies, and that no due process violation can therefore be shown. Defendants rely on *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), in which a state prisoner alleged that the negligence of state officials in losing a hobby kit he had ordered through the mails had deprived him of property without due process of law. The Supreme Court reversed a grant of summary judgment in the prisoner's favor, and held that the due process clause of the fourteenth amendment is not violated when a state official negligently deprives an individual of property, provided that the state makes available a meaningful postdeprivation remedy.

The Court in *Parratt* reasoned that where a loss of property is occasioned by the random and unauthorized act of a state employee, rather than through an established state procedure, the state cannot predict in advance when the loss will occur. 451 U.S. at 541, 101 S.Ct. at 1916. Since a prior hearing is either impossible or impracticable under such circumstances, the Court concluded that postdeprivation remedies provide all the process that is due.

The decision in *Parratt* generated conflicting decisions and scholarly controversy over its applicability to intentional acts and to deprivations of liberty. Although the Seventh Circuit has applied *Parratt* to some state-inflicted liberty deprivations, *State Bank of St. Charles v. Camic*, 712 F.2d 1140, 1147 (7th Cir.), *cert. denied*, —— U.S. ——, 104 S.Ct. 491, 78 L.Ed.2d 686 (1983); *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 871 (7th Cir.1983); *Ellis v. Hamilton*, 669 F.2d 510, 515 (7th Cir.), *cert. denied*, 459 U.S. 1069, 103 S.Ct. 488, 74 L.Ed.2d 631 (1982), it has also suggested in dicta that postdeprivation process may not be constitutionally adequate to remedy cases involving intentional misconduct of state officials. *Jackson v. City of Joliet*, 715 F.2d 1200, 1202 (7th Cir.1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 1325, 79 L.Ed.2d 720 (1984); *State Bank of St. Charles*, 712 F.2d at 1147–48. Plaintiff argues that *Parratt* has no applicability to either intentional acts or liberty deprivations, and that intentional encroachments on liberty by state officers are constitutionally impermissible no matter what procedural protections the state provides.

■ The court cannot accept either of these arguments. Plaintiff's contention that *Parratt* has no applicability to intentional acts, while arguably supported by dicta in this circuit, was squarely rejected by the Supreme Court last year in *Hudson v. Palmer*, —— U.S. ——, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). The reasoning of the court is instructive:

While *Parratt* is necessarily limited by its facts to negligent deprivation of property, it is evident ... that its reasoning applies as well to intentional deprivations of property. The underlying rationale of *Parratt* is that when deprivations of property are effected through random and unauthorized conduct of a state employee, predeprivation procedures are simply "impracticable" since the state

cannot know when such deprivations will occur. We can discern no logical distinction between negligent and intentional deprivations of property insofar as the "practicability" of affording predeprivation process is concerned. The State can no more anticipate and control in advance the unauthorized intentional conduct of its employees than it can anticipate similar negligent conduct. Arguably, intentional acts are even more difficult to anticipate because one bent on intentionally depriving a person of his property might well take affirmative steps to avoid signalling his intent.

If negligent deprivations of property do not violate the Due Process Clause because pre-deprivation process is impracticable, it follows that intentional deprivations do not violate that Clause provided, of course, that adequate state post-deprivation remedies are available. Accordingly, we hold that an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available. For intentional, as for negligent deprivations of property by state employees, the State's action is not complete until and unless it provides or refuses to provide a suitable postdeprivation remedy.

*Id.* at 3203–04.

■ Neither *Parratt* nor *Hudson* dealt with liberty deprivations. Even were this court not bound by applicable Seventh Circuit precedent applying *Parratt* to liberty cases, *see, e.g., Wolf-Lillie,* 699 F.2d at 871, plaintiff's argument would fail. The reasoning of *Hudson* indicates without doubt that any rigid distinction between "liberty" and "property," like that between negligent and intentional deprivations, is meaningless insofar as the practicability of affording predeprivation process is concerned. It would be anomalous, for example, to uphold a § 1983 claim for a state-caused automobile collision simply because the accident resulted in death or personal injury as opposed to mere property damage. The state can no more anticipate and control random and unauthorized deprivations of liberty than it can anticipate similarly unauthorized property deprivations. The difference in injury is entirely unforeseen, and therefore irrelevant in determining the degree of procedural protections constitutionally required.

The conclusion that *Parratt* applies to liberty as well as property deprivations is further implicit in that opinion's citation and discussion of *Ingraham v. Wright,* 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977). In *Ingraham,* the Court had held the administering of corporal punishment in schools without a prior hearing was not constitutionally impermissible on the ground that the state's common-law postdeprivation remedies provided all the process that was due. The Court in *Parratt* noted that its analysis was "quite consistent" with that in *Ingraham,* even though the earlier case had involved both an intentional act and a deprivation of liberty. *Parratt,* 451 U.S. at 542, 101 S.Ct. at 1916. *See also Hudson,* 104 S.Ct. at 3204 n. 14. The plaintiff's complaint therefore fails to state a claim for denial of procedural due process.

That plaintiff has failed to state a procedural due process violation does not, of course, end the inquiry, since it is well established that *Parratt* does not apply where the plaintiff asserts a violation of substantive constitutional guarantees. *Guenther v. Holmgreen,* 738 F.2d 879, 882 (7th Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 1182, 84 L.Ed.2d 329 (1985); *Wolf-Lillie,* 699 F.2d at 871–72; *Camic,* 712 F.2d at 1147 n. 5. Plaintiff argues, in reliance on *Anton v. Lehpamer,* 584 F.Supp. 1382, 1385 (N.D.Ill.1984), that intentional encroachments of liberty by state officers violate due process regardless of the state-law procedures available for redressing those injuries. The cases which support this line of reasoning, however, have distinguished *Parratt* not because the official acted with intent or because that official inflicted bodily instead of property

injury, but because the governmental action complained of rose to the level of a substantive due process violation for which the availability of postdeprivation process is no defense. *See Begg v. Moffitt*, 555 F.Supp. 1344, 1362 & n. 58 (N.D.Ill.1983).

As noted by Justice Powell, *Parratt* leaves unanswered under what circumstances the tortious conduct of state officials might be so inherently impermissible as to fall within the substantive prohibitions of the due process clause. *Parratt*, 451 U.S. at 552–53 & n. 10, 101 S.Ct. at 1921 & n. 10 (Powell, J., concurring in result). Indeed, one of the chief controversies over *Parratt* stems from its implicit suggestion that, outside specific provisions from the Bill of Rights, the due process clause contains no such substantive dimension. Fortunately, this court need not resolve the question, since one prerequisite for such a claim has always been a "[m]isuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Id.* at n. 10, quoting *United States v. Classic*, 313 U.S. 299, 326, 61 S.Ct. 1031, 1043, 85 L.Ed. 1368 (1941). The present complaint is void of facts suggesting such misuse of power.

For similar reasons, plaintiff's reliance on Judge Shadur's opinion in *Anton* is misplaced. This court shares with Judge Shadur the concern that *Parratt* not be mechanistically expanded "to bar federal relief for the very wrongs ... that have so long been viewed as the central focus of section 1983." *Anton*, 584 F.Supp. at 1385. *Anton*, however, concerned a claim of excessive use of force by police during arrest. Such claims have long been cognizable under § 1983, *see Blake v. Katter*, 693 F.2d 677, 682 (7th Cir.1982), and it is unlikely that *Parratt* was intended to overrule that line of cases *sub silentio*.

■ In the present case plaintiff makes no allegation that defendants used excessive force as part of an effort to detain him, only that defendant Weidenbach intentionally drove in front of him. There are no allegations that defendants acted in con-

cert. The most reasonable inference to draw is simply that defendant Weidenbach drove into plaintiff because one or the other was driving down the wrong side of the street. Plaintiff may not, by mere allegations of malice, transform a routine auto accident involving state officials into a constitutional claim under § 1983. *Cf. Ellsworth v. Mockler*, 565 F.Supp. 110, 113 (N.D.Ind.1983).

■ Plaintiff argues that it takes no stretch of the imagination to infer from his complaint that defendants intentionally used excessive force to detain him by running into him with an automobile. The court finds that it would indeed take a stretch of imagination to infer these facts from plaintiff's complaint. The only "detention" alleged by plaintiff is that which occurred by reason of the collision. To infer that defendants were effecting a *de facto* arrest is implausible, especially where only Weidenbach is alleged to have inflicted the injury, where neither defendant is alleged to have been acting in a law enforcement capacity, where plaintiff's complaint nowhere specifies the degree of force used or the injuries suffered, and where plaintiff was subsequently convicted by a jury of driving recklessly down the wrong side of the road. This latter finding, of course, would collaterally estop plaintiff in this court, despite the contrary allegations of his complaint. *Allen v. McCurry*, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980).

Despite the deficiencies of plaintiff's complaint, the inferences argued in plaintiff's brief are not altogether patently implausible. Plaintiff might be able to allege that defendant Weidenbach deliberately drove into and deliberately injured plaintiff for the *purpose* of detaining him so as to state an excessive use of force claim cognizable under § 1983. While the court has serious doubts about plaintiff's ability to allege such matters in good faith, plaintiff may seek leave to amend. Any amended complaint, however, should conform to the factors set forth in *Freeman v. Franzen*, 695 F.2d 485, 492 (7th Cir.1982), *cert. denied*, 463 U.S. 1214, 103 S.Ct. 3553, 77

L.Ed.2d 1400 (1983), for delineating why the excessive force reached unconstitutional proportions. Second, plaintiff should allege what, if any, injury he suffered at the hands of Benstein. In the present complaint, plaintiff alleges that Benstein unsuccessfully attempted to block plaintiff's exit from the park, but does not allege that Benstein caused any injuries to him or is somehow responsible for Weidenbach's actions.

The court reminds plaintiff's counsel of his obligations under Fed.R.Civ.P. 11 to conduct reasonable inquiry for the purpose of ascertaining whether an amended pleading would be well grounded in fact and law. Plaintiff's counsel has already been remiss by alleging first amendment violations where none reasonably appear, and by alleging that defendants had no justification in blocking plaintiff's right of way when previous judicial proceedings have determined that Weidenbach, not plaintiff, had the right of way. Violations of Rule 11 may result in sanctions.

Accordingly, defendants' motion to dismiss the complaint is granted. If plaintiff does seek leave to amend, a proper motion, accompanied by the proposed pleading, must be presented to the court on or before May 29, 1985.

It is so ordered.