**Paul STANULONIS**

v.

**Michael MARZEC, Robert Terry and Henry Cordell.**

**No. Civ. H–84–1015 (PCD).**

United States District Court,
D. Connecticut.

Dec. 30, 1986.

Margaret M. Dorsey, Tierney & Whelan, Greenwich, Conn., for plaintiff.

Raymond J. Plouffe, Jr., Bai, Pollock & Dunnigan, Bridgeport, Conn., for defendants Michael Marzec and Robert Terry.

John W. Butts, Broder & Butts, Colchester, Conn., for defendant Henry Cordell.

## RULING ON MOTION FOR SUMMARY JUDGMENT

DORSEY, District Judge.

*Facts*

On September 25, 1982, the defendant, Michael Marzec, a Connecticut State Trooper, was monitoring traffic by use of radar on Routes 2 and 11. At approximately 8:45 p.m., Marzec observed the plaintiff speeding at what Marzec claims was 73 miles per hour. Investigation Report at 1; Marzec deposition at 9. Marzec left his position and began to chase plaintiff. Two to three and one-half miles later he activated his emergency lights. Marzec deposition at 14. The parties disagree as to whether Marzec ever activated his siren. It is undisputed that plaintiff saw the emergency lights, Stanulonis deposition at 26, that he consciously tried to avoid arrest, *id.* at 32 and 57, and that he may have even increased his speed to effectuate his escape. *Id.* at 31–32.

Some time after Marzec activated his lights, he radioed Troop K in Colchester, informed them of the chase and the course on which he was proceeding. Investigation Report at 1. While the chase was being conducted, Salem Town Constable Henry Cordell was delivering mail to the Rawolle residence which was located off Route 85. While inside the residence, Cordell received a communication from Troop K informing him that an officer was involved in a chase. Cordell deposition at 25. He left the residence, returned to his car, radioed Troop K on his mobile radio, and was told that there was a pursuit in progress that was headed southbound. *Id.* at 32. Cordell does not remember whether he was also informed of the street the pursuit was on. He exited the Rawolle residence via Route 85. *Id.* at 37. According to Cordell, he turned northbound on a wide dirt path that parallels Route 85 and borders the Rawolle property. *Id.* at 41. While negotiating this turn and heading north on Route 85, Cordell received a third transmission that the pursuit was proceeding southbound on Route 85. *Id.* at 42. Elsewhere, however, Cordell indicated that he may have received the third transmission before exiting the driveway. Cordell statement at 1. Cordell continued on the dirt portion bordering the road until he reached a set of guardrails. Cordell deposition at 41. According to Cordell, the distance from the driveway to the guardrails is approximately 50 yards. Cordell statement at 1. Cordell claims that at this point he decided to negotiate a u-turn in the street so as to align his car on the southbound side of the road so that he could proceed with the chase after plaintiff and Marzec went by. Cordell statement at 1. Unable to complete the u-turn in one turn, upon reaching the other side of the road, Cordell backed up into the highway. Cordell deposition at 49–51. When he came to rest in this position, he noticed a vehicle with one headlight travelling south in the northbound lane and moving towards him. Undecided as to whether to move forward or backwards at this point, he decided the best choice was to stay stationary and allow the motorcycle to go around him. Cordell deposition at 51–52; Cordell statement at 1. Cordell claims there was approximately fifteen feet in front and in back of him for the motorcycle to go around him. Cordell statement at 1.

While Cordell was allegedly negotiating his u-turn, Marzec was still in pursuit of plaintiff. During the course of the chase, plaintiff went through a stop light without stopping. Stanulonis deposition at 96, Investigation report at 1. After rounding the curve on Route 85, just south of Horse Pond Road, Investigation Report at 1, plaintiff saw Cordell's car in front of him about 100 yards away. According to plaintiff, he went into the northbound lane to avoid Cordell's car. However, instead of remaining in his position, Cordell backed up his car so as to block plaintiff's course. Stanulonis deposition at 102, 103. Plaintiff hit Cordell's car with his motorcycle and suffered severe injuries.

Marzec measured the distance from the sight line of the previous curve to the point of impact as 589 feet. Investigation report at 2. However, elsewhere he indicated that when he rounded the curve and observed the accident, he was 300–500 feet away. Marzec deposition at 28. It is undisputed that during the course of these events, that Marzec and Cordell were never in direct communication although they were able to overhear each other's communications to Troop K. Also, it is undisputed that Cordell could have exited the Rawolle driveway straight across Route 85 and aligned his car on the south side of the road and proceeded with the chase from that point.

Based on these facts, plaintiff has instituted this action against defendants, Marzec and Cordell, alleging that their action deprived him of his liberty interest to be free from unreasonable bodily injury without due process of law in violation of the Fourteenth Amendment and that such actions amount to excessive force in violation of his Fourth Amendment guarantee to be free from unreasonable searches and seizures. Plaintiff has also sued State Police Sergeant Robert Terry alleging that he failed to properly supervise the chase so as to prevent plaintiff's constitutional rights from being violated.

### Discussion

Defendants have moved for summary judgment or, in the alternative, for dismissal on the following grounds:[1]

1. Defendants' actions amount, at most, to negligence which under *Daniels v. Williams*, — U.S. —, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986) and *Davidson v. Cannon*, — U.S. —, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986) does not give rise to a cause of action under 42 U.S.C. Section 1983.

2. Even if defendants' actions were more than mere negligence, plaintiff's entitlement to due process is met by a state tort action, not a federal suit, *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981).

3. Defendants are immune from suit under *Malley v. Briggs*, — U.S. —, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).

4. Since this case may involve a question of the propriety of defendants' actions in light of the State Police Policy and Procedure Guidelines for Pursuit Driving, the court should abstain from deciding it under *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941) or *Buford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943).

"Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, — U.S. —, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The purpose of the motion "is to isolate and dispose of factually unsupported claims or defenses...." *Id.* 106 S.Ct. at 2553. The nonmoving party must go beyond his pleading and produce proof to support his claims. *Id.* A motion to dismiss, on the other hand, Fed.R.Civ.P. 12(b)(6), is properly granted when, taking the plaintiff's claims to be true, the complaint states no facts upon which they could be granted.

### I. The Liberty Interest and the Fourth Amendment

Defendants' argue that summary judgment should be granted in this case because defendants' actions at most amount to mere negligence which, under *Daniels*, 106 S.Ct. at 663, does not give rise to a constitutional tort. Alternatively, they argue that even if *Daniels* does not apply, or if it does and their actions are found to constitute more than mere negligence, the process due plaintiff is the state tort remedy. Plaintiff argues, first, that *Daniels* should not be applied retroactively; second, that even if *Daniels* is applied, defendants' actions constituted more than negligence;

---

1. Defendants' briefs will be considered together.

and, three, that *Daniels* does not apply to substantive due process claims.

*Daniels* overruled *Parratt*, 451 U.S. at 527, 101 S.Ct. at 1908 holding that "the Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss or injury to life, liberty, or property." *Daniels*, 106 S.Ct. at 663 (emphasis in original). However, "the Supreme Court ... did not change the rule that an intentional abuse of official power, which shocks the conscience or which infringes a specific constitutional guarantee such as those embodied in the Bill of Rights, implicates the substantive component of the Due Process Clause regardless of the availability of state remedies." *New v. City of Minneapolis*, 792 F.2d 724, 725–726 (8th Cir.1986); *McClary v. O'Hare*, 786 F.2d 83, 86 n. 3 (2d Cir.1986). To harmonize these two rules requires an analysis of the rights afforded by the Bill of Rights, the substantive due process rights afforded by the Fourteenth Amendment, and the procedural due process rights afforded by the Fourteenth Amendment.

■ The Fourteenth Amendment "is the source of three different kinds of constitutional protection." *Daniels*, 106 S.Ct. at 677 (Stevens, J. concurring in judgments of *Daniels* and *Davidson* ). First, the amendment incorporates many of the rights and privileges found in specific provisions of the Bill of Rights. *Id.* Here, plaintiff claims that defendants' activity constituted excessive force in violation of his Fourth Amendment's guarantee against unreasonable seizure. The Fourth Amendment is applicable to the states, *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). In the context of excessive force, the Fourth Amendment prohibits state officials from using egregious or outrageous force in seizing a person in order to make an arrest. *New*, 792 F.2d at 726; *accord, Tennessee v. Garner*, 471 U.S. 1, 7–9, 105 S.Ct. 1694, 1699–1700, 85 L.Ed.2d 1 (1985). A claim of excessive force is not considered in the context of the availability of state remedies. *Daniels*, 106 S.Ct. at 678; *New*, 792 F.2d at 726.

■ The second protection in the Fourteenth Amendment is substantive due process. *Daniels*, 106 S.Ct. at 678. Substantive due process "bars certain arbitrary government actions...." *Id.* The substantive due process right invoked here is plaintiff's liberty interest in being free from the "application of undue force by law enforcement officers...." *Johnson v. Glick*, 481 F.2d 1028, 1032 (2d Cir.) *cert. denied sub nom. John v. Johnson*, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973). Plaintiff's claim is that defendants violated his right to be free from bodily injury and that their actions under these circumstances constituted undue force. Such a substantive due process claim is likewise not considered in the context of the availability of a state remedy. To hold otherwise, "would require a claimant to resort to state tort remedies in precisely those situations—involving the abuse of governmental power—to which Section 1983 was directed." *McClary*, 786 F.2d 83, 86 n. 3.

■ The third protection embodied in the Fourteenth Amendment is procedural due process. This protection is most frequently invoked when a state has conferred a right and then decides to withdraw that right without providing a fair procedure by which the guarantor might contest that withdrawal. *Cleveland Board of Educ. v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). In procedural due process cases, an available and adequate state remedy eliminates an essential element of a claim of procedural due process which is valid only in the absence of a fair procedure in which to contest the state's action or to obtain redress for actions taken. *McClary*, 786 F.2d at 86 n. 3.

The plaintiff's complaint, which invokes this Fourth Amendment and due process, requires that each claim be analyzed separately.

A. *Substantive Due Process*

*Daniels* clearly precludes a substantive due process claim based on mere negligence. Thus, the legal sufficiency of plain-

tiff's substantive due process claim requires determination of *Daniels'* retroactive application. This appears to be a case of first impression. *Maddox v. City of Los Angeles,* 792 F.2d 1408, 1413 n. 1 (9th Cir. 1986) ("we decline to decide the difficult issue of whether *Daniels* and *Davidson* should be applied retroactively."). *But see, Dunster v. Metropolitan Dade County,* 791 F.2d 1516, 1518–19 (11th Cir.1986) (apparently assuming *Daniels* applied retroactively, the court reversed a judgment based on a jury verdict which was based, in turn, on a charge that negligence was actionable conduct under section 1983).

### (1) Retroactive Application

■ Retroactivity is determined by three questions: (1) does the decision "establish a new principle of law, either by overruling clear past precedent on which litigants may have relied ... or by deciding an issue of first impression whose resolution was not clearly foreshadowed[?]"; (2) considering the merits of each case, will retroactive application "further or retard" operation of the rule?; and (3) will retroactive application "produce substantial inequitable results" to the parties? *Chevron Oil Co. v. Huson,* 404 U.S. 97, 106–07, 92 S.Ct. 349, 355, 30 L.Ed.2d 296 (1971).

Unquestionably *Daniels* overruled *Parratt* and established a new rule for Section 1983 actions. However, the critical question established by *Chevron* was not merely whether the decision changed prior law, but whether the decision changed the policy or rule on which the litigants relied. Plaintiff claims this element is satisfied because defendants' Motions to Dismiss relied on *Parratt v. Taylor* to support their claims. Plaintiff's argument misses the mark. First, defendants are not bound to *Parratt* merely because of prior reliance on it. *Chevron* is not couched in terms of estoppel of one's altering his position because the law changed, but rather sought to ensure that those who had relied on

prior law would not be arbitrarily foreclosed from litigating their claim because the law had changed. Plaintiff might argue that he had relied on negligence as legally sufficient for his section 1983 suit and should not now be foreclosed because of *Daniels.* However, this argument is without merit. In *Belcha v. DeBenedet,* Civ. No. N–85–212, slip op. (D.Conn. Feb. 4, 1986) [Available on WESTLAW, DCTU database], the court refused to apply *Wilson v. Garcia,* 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985) (which was assumed by the parties to require application of Connecticut's two year statute of limitations), to plaintiff's claim of illegal arrest, where plaintiff had relied on the previously applied three year statute of limitation when filing his action. It was deemed inequitable to hold that the plaintiff had slept on his rights. *Belcha,* slip op. at 5. Here, the same reasoning is not applicable. Plaintiff did not rely on *Parratt* in conducting himself as he did on September 25, 1982. Nor has he relied on this section 1983 action as the sole means of redress. He has sued defendants in state court. *Stanulonis v. Marzec,* Civil No. 84–0073016S (Judicial Dist. of Stamford/Norwalk). Reliance is not a factor in this case.[2]

Second, to fail to apply *Daniels* retroactively would retard the operation of Section 1983. "Our Constitution deals with the large concerns of the governors and the governed, but it does not purport to supplant traditional tort law in laying down rules of conduct to regulate liability for injuries that attend living together in society." *Daniels,* 106 S.Ct. at 666. To hold that retroactivity is not proper in this case would establish a precedent which contradicts the holding of *Daniels.* To fail to apply retroactivity would extend *Parratt* potentially to all those cases arising between 1981 and 1986 and "would frivolize the centuries-old principle of due process of law." *Id.* at 665.

---

**2.** Apparently, defendants Marzec and Terry have been stricken from the state suit for reasons of sovereign immunity. Plaintiff's Opposition Brief to Henry Cordell's Motion for Summary Judgment at 11. This claim is not fatal to

the Court's disposition of this motion as to defendants' Marzec and Terry since, as discussed *infra,* they have not violated plaintiff's constitutional rights. *Daniels,* 106 S.Ct. at 666 and n. 1.

■ Finally, there is no doubt that retroactive application of *Daniels* would result in some inequity to plaintiff. However, that inequity is mitigated by the fact that plaintiff's state court action is preserved. Furthermore, the inequity to defendants should *Daniels* not apply retroactively must also be considered. The Fourteenth Amendment is not a source of tort law designed to be superimposed on the various state systems. *Daniels,* 106 S.Ct. at 666, (*citing Paul v. Davis,* 424 U.S. 693, 701, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1976). To fail to apply *Daniels* retroactively would work a hardship on state officials who would have to litigate a claim of negligence in a federal court which really had no business meddling in state affairs. Thus, *Daniels* must be applied retroactively.

### (2) Defendant's Conduct

While *Daniels* left open the question of whether gross negligence or recklessness would suffice as a basis for a Section 1983 action, *Daniels,* 106 S.Ct. at 667 n. 3, conduct of such character has been held sufficient. *Bass v. Jackson,* 790 F.2d 260, 262 (2d Cir.1986); *McKenna v. City of Memphis,* 785 F.2d 560, 562 (6th Cir.1986); *Williams v. City of Boston,* 784 F.2d 430, 434 (1st Cir.1986).

Plaintiff has produced sufficient facts to warrant the inference that Constable Cordell intended to use his car in the formation of a roadblock. There is a question of fact as to when he was informed that the chase was proceeding southbound on Route 85. *Compare* Cordell Police Report at 1, *with* Cordell Deposition at 41. He admits that he could have proceeded across Route 85 from the Rawolle driveway and aligned his car southbound at that point. Instead, he proceeded north on Route 85 approximately fifty yards, Cordell statement at 1, until he reached a series of guardrails. At that point, he could no longer travel on the dirt path bordering the road. Arguably, knowing the chase was headed in his direction,

he exited the Rawolle driveway, drove to a point where the road was most narrow and then drove across Route 85. He waited for plaintiff to round the curve further down the road, and then proceeded to maneuver his car in front of the motorcycle. Stanulonis deposition at 102–03. The evidence may well support more strongly an inference that Cordell was simply negotiating a u-turn when the accident occurred. But, the evidence arguably also supports the inference that Cordell intended to create a roadblock.[3] *D.L. Auld Co. v. Chroma Graphics Corp.,* 714 F.2d 1144, 1146 (Fed.Cir.1983) (On motion for summary judgment, "[e]vidence and inferences must be viewed and drawn in a light most favorable to the nonmoving party."); *Los Angeles Airways, Inc. v. Davis,* 687 F.2d 321, 324 (9th Cir.1982) ("In reviewing [a] motion for summary judgment, [a court] ... must view the evidence and the factual inferences drawn from evidence in the light most favorable to party opposing motion for summary judgment.") This is particularly true since a person's intentions are often a matter of inference, solely within that person's knowledge, and substantially to be determined as a question of credibility. *Ness v. Marshall,* 660 F.2d 517, 519 (3d Cir.1981) ("where intent is a substantive element of the cause of action—generally to be inferred from the facts and conduct of the parties—... courts should not draw factual inferences in favor of the moving party and should not resolve any issues of credibility."). *Cross v. United States,* 336 F.2d 431, 433 (2d Cir.1964) (*quoting, Empire Electronics Co. v. United States,* 311 F.2d 175, 180 (2d Cir.1962)) ("Summary judgment is particularly inappropriate where 'the inferences which the parties seek to have drawn deal with questions of motive, intent, and subjective feelings and reactions'.").

■ Would a roadblock under these circumstances constitute something more

---

**3.** The creation of a roadblock by the simple positioning of the vehicle would manifest an intention to obstruct plaintiff's passage on the road. It would not, absent other facts, manifest an intention to precipitate a collision for a road-block could easily result in the target's stopping or going around the roadblock. However, here, the record suggests that Cordell moved the car at the last moment to cause a collision with plaintiff.

than mere negligence? *Daniels* requires a distinction between mere negligence and gross negligence or recklessness. The distinction between these three standards was aptly described by Judge Magruder as the difference between "a fool, a damned fool, and a God-damned fool." Harv.L.Record, April 6, 1959, *quoted in* W. Posser, J. Wade, & V. Schwartz, *Torts* at 207 (6th Ed.1976). Gross negligence has generally been discredited as no more than a confusing term constituting only a greater amount of negligence. *Id.* at 206–07; D. Wright, *Connecticut Law on Torts* at 37 (1968 and Supp.1982). Nevertheless, where it is followed, gross negligence is found in the failure to exercise a slight degree of care as opposed to the ordinary duty of reasonable care by which ordinary negligence is measured. 57 Am Jur.2d, Section 99, at 447 (1971 and Supp.1986). Recklessness, sometimes referred to as wanton or willful misconduct, describes conduct by one who

> "does an act or intentionally fails to do an act which it is his duty to [another] ... to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent."

Restatement (Second) on Torts, Section 500 (1965 & App.1975). Finally, intended tortious behavior is described as conduct where "the actor desires to cause consequences of his act, or ... believes that the consequences are substantially certain to result from it." *Id.* at section 8A.

▮ Applying these standards, it cannot be said that Cordell's actions were necessarily either reasonable or merely negligent. Plaintiff's scenario is that Cordell knew that plaintiff was proceeding southbound on Route 85 when he left the Rawolle driveway. He then purposely drove north to a narrow portion of the road, maneuvered his car into the middle of the road and there awaited plaintiff's arrival. When plaintiff went into the northbound lane and attempted to drive behind Cor-

dell's car, Cordell backed up so as to prevent him from further evading arrest. The State Police Policy and Procedure Guidelines for Pursuit Driving ("Special Order 57–A"), published one year before this accident, states that "[t]he objective of a pursuit is to apprehend a violator who refuses to voluntarily comply with the law requiring the operator to stop. It is the policy of this Department that high risk pursuit is justified when the necessity of apprehension outweighs the danger of pursuit." Special Report 57–A at 1. The report further states that the paramount concern in continuing or discontinuing any pursuit are threefold: the safety of the public, the officer, and the suspect being pursued. *Id.* at 1 and 3. In fact, the guidelines clearly state that a chase shall be discontinued when continuance would pose "a serious hazard ... and ... risk of injury to the ... suspect." *Id.* Should an officer decide to continue with the pursuit, he may, at last resort, rely on three alternatives: (1) boxing in, (2) ramming and (3) roadblocks. A roadblock is described as "the last possible alternative to be utilized and may only be employed when it is known that the pursued vehicle contains fleeing felons." *Id.* at 4. It is undisputed that, as guilty of various motor vehicle violations as he may have been, plaintiff was not a fleeing felon. If Cordell acted as claimed by plaintiff, he could be found not only to have acted unreasonably but with only a slight degree of care for plaintiff's well being. Strange as it may sound, even one such as plaintiff is entitled to the exercise of care such that they are not subjected to undue risk of injury. *See Wierstak v. Heffernan,* 789 F.2d 968, 974 (1st Cir.1986) (court sustained the trial court's denial of a directed verdict where the jury had found the city liable for gross negligence for improperly informing its officers as to when to engage in high speed pursuit.)

This case is distinguishable, moreover, from *LeCuyer v. Weindenback,* 613 F.Supp. 509 (N.D.Ill.1985). *LeCuyer,* a pre-*Daniels* Section 1983 case, held that state conservation officers who drove their car so as to cause a collision with the

plaintiff, were not subject to a section 1983 claim. There was no evidence that defendants were effectuating a *de facto* arrest. Indeed, the most reasonable inference was that "defendant Weidenback drove into plaintiff because one or the other was driving down the wrong side of the street." *Id.* at 513. The court concluded that it would not "transform a routine auto accident involving a state official into a constitutional claim under Section 1983." *Id.* Here, if the facts are as plaintiff claims, Cordell could be found to have intentionally attempted to block plaintiff's path so as to effectuate an arrest without regard to the risk of injury he thus created. Such conduct could be found to have constituted more than simple negligence and may well be found to have constituted gross negligence or even recklessness. The record here certainly militates against deciding the quality of Cordell's conduct on a summary judgment motion.

■ There is, however, insufficient evidence on which Officers Terry's and Marzec's conduct could be found to be anything beyond negligence, if that. Plaintiff does not claim that Marzec and Cordell conspired to deprive plaintiff of his rights. Indeed, the evidence suggests that they had no communication with one another. Nor is there any evidence which suggests that Cordell communicated an intention to set up a roadblock to the barracks, which Marzec might have overheard and decided to chase plaintiff into the roadblock.[4] Officer Marzec was chasing an admitted speeding driver who, during the chase, ran a stop sign, possibly passed other cars illegally, and without a doubt, was attempting to evade arrest. Considering these factors, Marzec deemed the chase justified. Special Order 57–A at 1. The traffic was light, the weather was clear, and Marzec had not been able to ascertain plaintiff's license plate number so that if he discontinued the chase, he could make an arrest later. Furthermore, it is uncontroverted that Marzec had refused to pass cars when to do so would have been dangerous and unreasonable. On these facts, it cannot be

said that Marzec's conduct amounted to anything more than negligence, if that. *Flying Diamond Corp. v. Pennaluna & Co., Inc.,* 586 F.2d 707, 713 (9th Cir.1978) ("Although questions of negligence are usually for fact finder, summary judgment is proper where the facts are undisputed and only one conclusion may be reasonably drawn from them. Negligence then becomes a matter of law.").

■ Similarly, Terry's conduct does not amount to negligence. Terry is claimed to be liable because he failed to supervise the chase properly in that he did not order its termination. The decision to discontinue the pursuit could have been made by either Marzec or Terry based on whether continuance would: (1) pose an extreme hazard or risk or injury "to the trooper, the public, or [the] suspect" versus whether the "necessity for immediate apprehension" was of more paramount concern; (2) whether the suspect could be identified and apprehended later; and (3) whether the suspect's "vehicle's location was no longer known." Special Order 57–A at 2. Here the safety factor cannot really be questioned. In fact, the record suggests that plaintiff was going faster when he was first detected, (73 miles per hour), Marzec deposition at 9, than he was during the chase (65 miles per hour). Stanulonis deposition at 27–28. Plaintiff posed the danger and the pursuit may well have been an attempt to mitigate the potential harm that might result from his actions as well as to apprehend him. Second, Marzec was also justified in continuing the chase in order to ascertain the license plate of the motorcycle from which he might make a later arrest. Third, it is undisputed that though Marzec may have periodically lost sight of plaintiff, plaintiff's location was always known. Given these facts, it was not reasonable to proceed with the chase and therefore not unreasonable for Terry to refuse to discontinue it. Terry cannot be liable for Cordell's conduct as Terry has not been shown to have known of any

**4.** Neither Terry nor Marzec, moreover, could have known of Cordell's last minute decision to

move his car in front of plaintiff so as to cause the collision. *See* note 3, *supra.*

intention by Cordell to establish a roadblock. As a matter of law, Terry's actions could not be found to be more than negligence, if that. *Flying Diamond,* 586 F.2d at 713. Summary judgment shall enter in favor of defendant's Marzec and Terry.

## II. *Qualified Immunity*

"Immunity from suit protects a government official from being subject to the risk and burdens of a trial for actions taken in the course of his official duties."[5] *Fernandez v. Leonard,* 784 F.2d 1209, 1214 (1st Cir.1986). The standard is clear: did the official violate "clearly established statutory or constitutional rights of which a reasonable person would have known....[?]" *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). If so, the official is not immune from suit unless he presents extraordinary circumstances as to why he should not have known about the relevant legal standard. *Id.* at 818–19, 102 S.Ct. at 2738.[6] *Fernandez* held, after *Daniels,* that an official should know that the use of excessive force constitutes a substantive due process violation of one's constitutional rights and a violation of one's Fourth Amendment rights to be free from unreasonable searches. *Fernandez* at 1215–17. Here, Cordell's qualified immunity must fail. If as the plaintiff argues he intended to cause a collision of the vehicles, then he should have known that such would have created a high risk of serious injury to plaintiff and in turn to have violated plaintiff's constitutional rights. *Cf. Fernandez,* 784 F.2d at 1215–17; *Hughes v. Blankenship,* 672 F.2d 403, 406 (4th Cir.1982).

## III. *Fourth Amendment Excessive Force*

The Supreme Court recently reiterated that it is a violation of one's Fourth Amendment rights to be subject to an un-reasonable seizure. *Tennessee v. Garner,* 471 U.S. 1, 105 S.Ct. 1694, 1701, 85 L.Ed.2d 1 (1985). "The fundamental inquiry in all excessive force cases ... is whether the degree of force was necessary to protect a legitimate state interest ...", *Justice v. Dennis,* 793 F.2d 573, 576 (4th Cir.1986) or whether such force violated the individual's right to personal security free from arbitrary governmental interference. While, under *Daniels,* force which merely rises to the level of a state tort claim in negligence is not sufficient, "at some point the force is so disproportionate to the circumstances that it" rises to the level of excessive force. *Justice,* 793 F.2d at 577. The "[f]actors relevant to assessing disproportionality include, but are not limited to, the need for the force, the degree of the force applied, the injuries inflicted, and [the] totality of the circumstances surrounding the use of the force." *Id., citing Johnson,* 481 F.2d at 1033. Here, Cordell's movement of his vehicle in the path of plaintiff when he was so close as to create an immediate risk of a collision and significant injury, if proven, could be found to constitute unreasonable force in the attempt to apprehend plaintiff. That conduct, if proven as claimed, could constitute a violation of plaintiff's Fourth Amendment rights. *Jenkins v. Averett,* 424 F.2d 1228, 1232–33 (4th Cir.1970) (gross negligence may be sufficient for excessive force claim).[7]

## IV. *Official Capacity*

Plaintiff's suit against Cordell in his official capacity must be dismissed, however. "Official capacity suits generally represent but another way of pleading an action against the entity of which the officer is an agent, *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), and damages may be awarded against a defendant in his official

---

5. This issue need not be discussed as to defendants Marzec and Terry since their actions are held not to be actionable either under the theory of substantive due process or excessive force.

6. This exception is not relied on in this case.

7. For largely the same reasons as discussed *supra* with regard to Terry's and Marzec's conduct in relation to the substantive due process claim, their conduct is additionally held not to shock the conscience and therefore summary judgment on the basis of a want of evidence on which to base a claim of excessive force, is granted as to them.

capacity only if they would be recoverable against the governmental entity itself." *Hughes*, 672 F.2d at 406. Plaintiff has not pleaded a *Monell* count nor do the facts suggest the propriety of one. Thus, the action against Cordell in his official capacity must be dismissed.

### V. Abstention

Defendant Cordell's final argument is that the case should be dismissed on grounds of abstention. Cordell argues that the court should abstain in this case because it involves sensitive issues of police policy which should first be adjudicated in state court, *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), and/or because of general notions of federalism. *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943).

 Abstention is not warranted in this case. Plaintiff's case involves constitutional issues which Congress made redressable in federal court. 42 U.S.C. Section 1983. While the state guidelines of pursuit driving relate to the quality and character of Cordell's actions, they are not determinative. The primary concern of this case is the propriety of Cordell's actions from the standpoint of the Fourth and Fourteenth Amendments to the Constitution. Abstention is generally "considered appropriate where there is a state law susceptible of an interpretation which would modify or avoid the federal constitutional issue...." *Connecticut State Fed. of Teachers v. Board of Educ. Members*, 538 F.2d 471, 483 (2d Cir.1976). This case does not involve a determination of state policy nor an interpretation of state law. Rather, it includes assessing Cordell's actions based on developed federal law. "*Pullman* abstention is inappropriate ... where the issue is a question of the interpretation of ... a federal statute." *Housatonic Cable Vision v. Dept. of Public Utility*, 622 F.Supp. 798, 804 (D.Conn.1985).

 Nor should this case be dismissed on *Burford* principles. *Burford* abstention is appropriate where there is an established state procedure designed to determine cases which involve matters of state concern. *Id.* at 804. While there is no doubt that the state has a legitimate interest in designing and applying pursuit guidelines, that interest does not and cannot take precedence over an individual's right to preservation of his constitutional rights against abuse by the arbitrary exercise of governmental power. Abstention is the exception, not the rule, and Cordell has failed to present the exceptional circumstances necessary to invoke this doctrine. *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976); *Marshall v. Chase Manhattan Bank (N.A.)*, 558 F.2d 680, 683 (2d Cir.1977).

### VI. State Claims

Plaintiffs complaint is unclear as to whether he seeks to state a state law claim for violation of Conn.Gen.Stat. Section 14–283 separate and distinct from his constitutional claims. To the extent he does, such is dismissed under *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966), as being potentially confusing to the jury, to counsel and the court in the presentation and determination of such claims.

### Conclusion

Therefore, defendants' motion for summary judgment as to defendants Marzec and Terry is granted and denied as to defendant Cordell. The action against defendant Cordell in his official capacity is dismissed. Plaintiff's state claims are likewise dismissed. All that remains in this case, therefore, is the action against Cordell in his individual capacity.

SO ORDERED.