**Erika WILLS, et al.**

v.

**Vincent FERRANDINO, et al.**

**No. 2:92CV00937(AHN).**

United States District Court, D. Connecticut.

Aug. 13, 1993.

Lawrence W. Berliner, State of Conn., Office of Prot. & Adv. for the Handicapped, Hartford, CT, for plaintiffs.

Athan S. Mikalakos, Middlebury, CT, for defendants.

### RULING ON DEFENDANTS' MOTION FOR RECONSIDERATION

NEVAS, District Judge.

Erika Wills and her parents, Charles and Louise Wills, (collectively referred to as the "Willses") bring this action against the Waterbury Board of Education, Charles Joy, Foster Crawford, and Joseph Sullivan, individuals sued in their official capacities as Superintendents of Waterbury Public Schools, (collectively referred to as ("Waterbury") and individual members of State of Connecticut Board of Education, including Commissioner Vincent Ferrandino, who are also sued in their official capacities (collectively referred to as the "State"), pursuant to the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400 *et seq.*, Section

504 of the Rehabilitation Act of 1973 (Section 504), 29 U.S.C. § 794, and state special education laws, Conn.Gen.Stat. § 10–76a *et seq.* The Willses seek review of a recent decision by a state administrative hearing officer denying their request that Waterbury be compelled to provide Erika, a disabled person as defined by the IDEA, with an appropriate special education program in accordance with state and federal law. Currently pending is Waterbury's motion for reconsideration of the court's ruling denying its motion to dismiss the complaint for lack of subject matter jurisdiction. For the reasons stated below, the court GRANTS Waterbury's motion for reconsideration and VACATES the earlier ruling on the motion to dismiss. After reconsideration, the court GRANTS in part and DENIES in part Waterbury's motion to dismiss.

## Background

Erika Wills received special education and related services from the Waterbury Public Schools throughout the 1990–91 and 1991–92 school years. As a local educational agency receiving certain federal funds, the Waterbury Public Schools are required to provide these services in compliance with certain provisions of the IDEA. In particular, the IDEA dictates that local educational agencies create or revise, on a yearly basis, an individualized educational program (IEP) tailored to the unique needs of each disabled child. 20 U.S.C. § 1414(a)(5). Erika's parents attended meetings in an effort to assist in and monitor the design of an IEP suitable for her needs. The Willses, however, were ultimately dissatisfied with the IEP recommended for Erika.

Thereafter, the Willses requested a due process hearing before a state administrative hearing officer to contest the appropriateness of the IEP developed for Erika and to compel Waterbury to provide a compensatory education in accordance with state and federal law. After hearing evidence on the issue, a state hearing officer filed an initial decision on September 16, 1992 (the "initial decision"). On September 23, 1992, the hearing officer issued a second decision, consisting of approximately thirty pages of corrections of errors found in the initial decision (the "corrected decision"). A copy of the corrected decision was mailed to the Willses on September 23, and they received the copy on September 29, 1992.

In her corrected decision, the hearing officer noted that compensatory education could be awarded by a state agency in Connecticut. The hearing officer found, however, that the IEP provided Erika by Waterbury for the 1990–91 and 1991–92 academic years conformed to the requirements of federal and state laws. She concluded that Erika was not entitled to compensatory education for the years in issue. The Willses, moreover, were notified that they had 45–days from the mailing of the hearing officer's findings in which to file an appeal of the final decision.

On November 10, 1992, the Willses filed this federal action challenging the state hearing officer's findings and conclusions as set forth in the corrected decision. On December 7, 1992, Waterbury filed a motion to dismiss the action for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1), Fed. R.Civ.P. Waterbury argued that the Willses failed to file the action within the applicable statute of limitations period. On May 6, 1993, the court denied the motion with the following endorsement ruling:

> plaintiffs' appeal was filed November 10, 1992, forty-two (42) days after plaintiffs received the *corrected*, final administrative decision on September 29, 1992. Plaintiffs' appeal, therefore, was filed within the forty-five day statute of limitations period urged by the defendants. Accordingly, the court concludes that plaintiffs' appeal was timely filed under any of the proposed statute of limitations periods in this case. The court, however, offers no view as to what statute of limitations period it would employ in this action if it were forced to rule on the issue.

(*See* Filing No. 3, Endorsement Ruling (D.Conn. 5/6/93).) On May 17, 1993, Waterbury filed for reconsideration of the court's ruling pursuant to Rule 9(e)(1), R.Civ.P. (D.Conn.). On May 27, 1993, the Willses filed an objection to that motion. Accordingly, Waterbury's motion for reconsideration is now ripe.

## DISCUSSION

In their motion for reconsideration, Defendants renew their attack on the court's subject matter jurisdiction pursuant to Rule 12(b)(1), Fed.R.Civ.P. Specifically, Defendants argue that the Willses failed to file the action in compliance with the applicable statute of limitations and, therefore, the entire action must be dismissed for lack of subject matter jurisdiction.

As a preliminary matter, the court notes that the complaint sets forth claims under Section 504 as well as the IDEA. Clearly, the alleged IDEA and Section 504 violations constitute distinct causes of action whose statute of limitations periods derive from different statutory provisions. *Cf.* 20 U.S.C. § 1415 *with* 29 U.S.C. § 794; *see also Kampmeier v. Nyquist,* 553 F.2d 296, 299 (2d Cir.1977) (recognizing a private right of action for disabled persons under Section 504). Accordingly, the court evaluates the sufficiency of the IDEA and Section 504 claims separately.

### A. *IDEA Claims*

The IDEA was enacted in 1970 by Congress to ensure that children born with physical and mental disabilities were not denied the same educational opportunities commonly available to other children. 20 U.S.C. §§ 1400(b)(3), 1414(a)(1)(C). Congress, however, failed to prescribe a specific statute of limitations period for the bringing of IDEA actions.

■ In general, a court interprets Congressional silence on a statute of limitations period as a directive to "apply the most closely analogous statute of limitations under state law," *Del Costello v. International Brotherhood of Teamsters,* 462 U.S. 151, 158, 103 S.Ct. 2281, 2287, 76 L.Ed.2d 476 (1983), provided that "it is not inconsistent with federal law or policy to do so." *Wilson v. Garcia,* 471 U.S. 261, 266–67, 105 S.Ct. 1938, 1942, 85 L.Ed.2d 254 (1985). In determining the most analogous state statute of limitations, moreover, the court considers the essential nature of the federal claim and the extent to which the proceedings provided under the respective state and federal causes of action are functionally equivalent. *See*

*generally, Flavin v. Connecticut State Bd. of Educ.,* 553 F.Supp. 827, 831 (D.Conn.1982) (citing *Smith v. Perkin–Elmer Corp.,* 373 F.Supp. 930, 936 (D.Conn.1973) (Newman, J.)).

Applying these rules, this district has yet to settle on a precise statute of limitations period for actions brought under § 1415(e)(2) of the IDEA. *Cf. Flavin,* 553 F.Supp. at 831 (holding that an action filed 111 days after receipt of the State's final administrative decision was not untimely, but failing to specify a precise statute of limitations period). The court's first task, therefore, is to discern the applicable statute of limitations period for IDEA actions filed in the District of Connecticut.

### 1. Applicable Statute of Limitations Period

■ The statute of limitations issue in IDEA actions has produced a divergence of views among federal courts. Some courts have applied relatively short statute of limitations periods to IDEA claims brought pursuant to § 1415(e)(2). *See, e.g., Amann v. Town of Stow,* 991 F.2d 929 (1st Cir.1993) (30 days); *Spiegler v. District of Columbia,* 866 F.2d 461 (D.C.Cir.1989) (30 days); *Adler v. Education Dept.,* 760 F.2d 454 (2d Cir.1985) (4 months); *Department of Educ. v. Carl D.,* 695 F.2d 1154 (9th Cir.1983) (30 days); *Bow School Dist. v. Quentin W.,* 750 F.Supp. 546 (D.N.H.1990) (30 days). Conversely, other courts have held that longer, multiple-year limitation periods are more appropriate analogues. *See, e.g., Scokin v. Texas,* 723 F.2d 432 (5th Cir.1984) (2 years); *Tokarcik v. Forest Hills School Dist.,* 665 F.2d 443 (3rd Cir.1981) (2 or 6 years), *cert. denied,* 458 U.S. 1121, 102 S.Ct. 3508, 73 L.Ed.2d 1383 (1982).

Here, defendants contend that the most analogous statute of limitations is the 45–day time period set forth in the Connecticut Uniform Administrative Procedure Act (UAPA), Conn.Gen.Stat. § 4–183(c). The court agrees.

In support of their argument, defendants offer the court a line of cases that adopt the limitations periods of their respective state administrative appeals provisions. *See Am-*

ann, 991 F.2d at 932; *Adler*, 760 F.2d at 456–457; *Bow School Dist.*, 750 F.Supp. at 550. *Amann*, is of particular interest to the court in this case.

In *Amann*, the First Circuit addressed the identical issue of whether the relatively short limitations period of the state's administrative appeal statute, or a longer, multi-year period should govern actions brought pursuant to § 1415(e)(2) of the IDEA. *See* 991 F.2d at 931. *Amann* noted that a court reviewing a state administrative decision under § 1415(e)(2) will rely heavily on the administrative record. *Id.* at 932. *Amann*, moreover, cited the United States Supreme Court ruling in *Board of Educ. v. Rowley*, 458 U.S. 176, 207, 102 S.Ct. 3034, 3051, 73 L.Ed.2d 690 (1982), for the proposition that a reviewing court must refrain from substituting its own views of educational policy for those of the administrative hearing officers. *Id.* Based on the limited parameters of the judicial inquiry in IDEA cases, *Amann* reasoned that the scope and nature of an action under § 1415(e)(2) was essentially one of review, similar to that employed in state administrative appeals. *Amann*, 991 F.2d at 932. Accordingly, *Amann* concluded that the 30–day statute of limitations period set forth in the Massachusetts Administrative Procedure Act provided the most analogous state statute of limitations period in an IDEA action brought pursuant to § 1415(e)(2).

The court finds this rationale compelling. First, *Amann*'s characterization of IDEA actions pursuant to § 1415(e)(2) as analogous to state actions appealing a state agency's administrative opinion is well taken. In characterizing IDEA actions as such, *Amann* relies on the view that under § 1415(e)(2) "courts reviewing agency decisions under the IDEA will rely primarily on the administrative record." *Amann*, 991 F.2d at 932 (citing *Town of Burlington v. Department of Educ.*, 736 F.2d 773, 790 (1st Cir.1984), *aff'd*, 471 U.S. 359, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985) ("the source of the evidence generally will be the administrative hearing record, with some supplementation at trial")). Although § 1415(e)(2) of the IDEA provides that the "court shall hear additional evidence at the request of a party ...," both this

district and the First Circuit interpret this provision as restricting the scope of this "additional evidence" to a "supplemental" role in which witnesses are not authorized to "repeat or embellish their prior administrative hearing testimony...." *Town of Burlington*, 736 F.2d at 790; *accord Doe v. Board of Educ.*, Civ. No. B–88–441(EBB) (D.Conn. December 1, 1989), slip op. at 2–3, *cited in*, *Jean N. v. Tirozzi*, Civ. No. H–88–703 (AHN) (D.Conn. March 5, 1991). This court, therefore, finds the First Circuit's rationale that IDEA actions primarily resemble state administrative appeals to be persuasive.

Second, the court shares *Amann*'s view that a shorter limitations period, such as that set forth in the respective state procedural provisions governing administrative appeals, is consistent with the IDEA's policy of promoting expeditious handling of disputes over a student's educational program. *Amann*, at 932.

Third, the court concurs with the view that any disadvantage imposed upon the disabled student or the parents of the student by the shorter period is minimized by other provisions of the IDEA. Specifically, the IDEA requires schools to review and revise IEP's for each student at least once per year. 20 U.S.C. § 1414(a)(5). In most cases, an aggrieved parent barred by the limitations period can expect a ripe cause of action to accrue the following year, if the parents continue to be dissatisfied with the child's IEP. Courts, moreover, interpret the IDEA, as imposing an affirmative duty on state and municipal authorities to notify aggrieved parents and students of the time limitations on the filing of actions pursuant to § 1415(e)(2). *See, e.g.*, *Amann*, 991 F.2d at 932; *Spiegler*, 866 F.2d at 467; *see also* 29 U.S.C. § 1415(b)(1)(D). Thus, the notification requirement protects those litigants who proceed without the aid of an attorney from unknowingly disqualifying themselves through their unfamiliarity with the law. Finally, in most cases, the only decision to be made by the plaintiffs when contemplating an IDEA action under § 1415(e)(2) is simply whether or not to appeal the agency's decision. The substantive legal issues and contentions will be virtually identical to those framed and tested during

the agency's administrative proceedings. IDEA actions, therefore, generally do not require the burdensome levels of factual investigation and legal research that necessitate longer limitations periods. Accordingly, the court concludes that the adoption of a shorter statute of limitations period will not significantly affect a party's ability to timely file an IDEA action.

In response, the Willses insist that *Flavin*, not *Amann*, should control the statute of limitations for IDEA actions filed in this district. Noting that *Flavin* is the only ruling to consider the statute of limitations on IDEA actions filed in the District of Connecticut, the Willses argue that *Flavin* constitutes an express rejection by this district of the 45–day limitations period for actions brought under § 1415(e)(2) of the IDEA. The Willses, therefore, invite the court to follow *Flavin* rather than *Amann* in this case. The court declines.

Admittedly, *Flavin* expressly rejected the identical 45–day statute of limitations period currently proposed by the defendants. In concluding that the nature of the judicial proceedings available to a plaintiff under § 4–183 of the UAPA were "quite unlike" those available under § 1415(e)(2) of the IDEA and thus not sufficiently analogous to warrant adoption of its 45–day limitations period, *Flavin* relied on the view that the IDEA contemplates *de novo* review of a state administrative appeal. *Flavin*, 553 F.Supp. at 831. Since *Flavin* was decided, however, a majority of federal courts, including courts in this district, have interpreted the Supreme Court's edict in *Rowley*, 458 U.S. 176, 204–208, 102 S.Ct. 3034, 3050–3051, 73 L.Ed.2d 690 (1982), as implicitly rejecting the use of *de novo* review in actions brought pursuant to § 1415(e). *See, e.g., Doe*, slip op. at 2 ("court must be careful not to ... change the hearing on appeal from a review to a trial *de novo*" in IDEA actions); *see also Adler*, 760 F.2d at 456; *Town of Burlington*, 736 F.2d at 790.[1] The rationale underlying *Flavin*'s re-

jection of the 45–day limitations period, therefore, is suspect.

Similarly, the court does not share *Flavin*'s contention that the scope of the evidence subject to review under the UAPA is markedly distinguishable from that of the IDEA. *Flavin* notes that, "in contrast" to the IDEA, the reviewing court under § 4–183 of the UAPA is confined to the administrative record and may not substitute its judgment for that of the administrative agency as to questions of fact. *Flavin*, at 831. Under the UAPA, however, a party may move to present additional evidence outside the administrative record and thereby expand that record in a manner similar to that allowed in IDEA actions. *See* C.G.S. § 4–183(h) (providing for presentation of material evidence, to be remanded to agency for modification of its findings). Conversely, the scope of the evidentiary record available to a court under the IDEA is not nearly as broad as *Flavin* suggests. *See, e.g., Doe*, slip op. at 2 (court is obligated to exclude additional evidence unless supplemental to fill gaps in administrative record or if evidence concerns matters subsequent to the administrative hearing).

Finally, the court notes that even if it concurred with *Flavin*'s rejection of the 45–day statute of limitations period, *Flavin* provides little guidance as to what the appropriate statute of limitations period would be in an IDEA action filed in Connecticut. For their part, the Willses urge the court to adopt the multi-year statute of limitations period governing personal injury actions in Connecticut as the most analogous state statute to the IDEA. In support of their position, the Willses rely on *Murphy v. Timberlane Regional Sch. Dist.*, 819 F.Supp. 1127 (D.N.H.1993) (Devine, J.), a recent District of New Hampshire ruling adopting that state's personal injury statute of limitations period in an IDEA case. The Willses' reliance on *Murphy*, however, is misplaced. In *Murphy*, the issue before the court concerned the applicable limitations period governing the

---

1. The impetus for rejection of *de novo* review derives from *Rowley*'s edict that a reviewing court is constrained in IDEA actions to give "due weight" to the determinations made during administrative proceedings, and that reviewing courts "must be careful to avoid imposing their view of preferable educational methods upon the States." *Rowley*, 458 U.S. at 207, 102 S.Ct. at 3051.

timeliness of a request for an *initial due process hearing* before the state or local education agency, and *not* the period governing actions seeking judicial review of agency findings pursuant to § 1415(e)(2). Indeed, case law from the District of New Hampshire directly refutes the application of a multi-year statute of limitations in actions such as the one brought by the Willses. In *Bow*, 750 F.Supp. at 549, the court found that the applicable limitations period for § 1415(e)(2) actions filed in New Hampshire is the 30–day period set forth in the state's administrative appeal statute. The court concludes, therefore, that the 45–day period set forth in the UAPA is the most appropriate statute of limitations period in this IDEA action.

### 2. Application

The determination that the 45–day statute of limitations period applies to IDEA actions filed in Connecticut does not end the court's inquiry. The court must now determine whether the Willses filed their action within the prescribed 45–day period.

As a preliminary matter, the parties contest whether the filing of an action within the prescribed statute of limitations period is a jurisdictional requirement necessitating strict compliance with the filing deadlines. Waterbury asserts that the failure to file an administrative appeal in strict compliance with the statute of limitations period deprives the court of subject-matter jurisdiction. The court agrees.

■ Under Connecticut law, the ability to seek judicial review of an administrative agency decision "exist[s] only under statutory authority" and, thus, "[a] statutory right to appeal may be taken advantage of only by strict compliance with the statutory provisions by which it is created." *Citizens Against Pollution Northwest, Inc. v. Connecticut Siting Council*, 217 Conn. 143, 152, 584 A.2d 1183 (1991). Furthermore, "[s]uch provisions are mandatory, and, if not complied with, the appeal is subject to dismissal." *Id.* Admittedly, a recent amendment to the UAPA no longer renders the failure to properly *serve* parties, other than the issuing agency, a jurisdictional defect. That amendment, however, fails to alter the jurisdictional

requirement that the action be *filed* within the applicable time limitation. Indeed, " '[t]he failure to file an appeal from an administrative decision within the time set by statute renders the appeal invalid and deprives the courts of jurisdiction to hear it.' " *Cassella v. Dept. of Liquor Control*, 30 Conn. App. 738, 740, 622 A.2d 1018 (1993); *Ierardi v. Comm'n on Human Rights & Opportunities*, 15 Conn.App. 569, 574, 546 A.2d 870, *cert. denied*, 209 Conn. 813, 550 A.2d 1082 (1988). Strict compliance with the 45–day statute of limitations period, therefore, is a prerequisite to the court's subject matter jurisdiction over any claim brought under § 1415(e)(2) of the IDEA.

■ Accordingly, the court proceeds to evaluate Waterbury's motion to dismiss under Rule 12(b)(1), Fed.R.Civ.P. In a motion to dismiss for lack of subject matter jurisdiction, the court construes the complaint broadly and liberally in conformity with the principle set out in Rule 8(f), Fed.R.Civ.P., "but argumentative inferences favorable to the pleader will not be drawn." 5A C. Wright & A. Miller, *Federal Practice and Procedure* § 1350 at 218–219 (1990 & Supp. 1991) ("Wright & Miller"). Once challenged, the burden of establishing a federal court's subject matter jurisdiction rests on the party asserting jurisdiction. *Thomson v. Gaskill*, 315 U.S. 442, 62 S.Ct. 673, 86 L.Ed. 951 (1942); *Grafon Corp. v. Hausermann*, 602 F.2d 781, 783 (7th Cir.1979). The mover and the pleader may use affidavits and other materials beyond the pleadings themselves in support of or in opposition to a challenge to subject matter jurisdiction. *Land v. Dollar*, 330 U.S. 731, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947); *Exchange Nat'l Bank v. Touche Ross & Co.*, 544 F.2d 1126, 1130 (2d Cir.1976). Unlike a motion to dismiss pursuant to Rule 12(b)(6), Fed.R.Civ.P., however, dismissals for lack of subject matter jurisdiction are not predicated on the merits of the claim. *Exchange Nat'l Bank*, 544 F.2d at 1130–1131.

■ A party may move to dismiss because of lack of subject matter jurisdiction at any time during the course of an action. Rule 12(b)(1), Fed.R.Civ.P.; Rule 12(h)(3), Fed.R.Civ.P.; *John B. Hull, Inc. v. Water-*

bury Petroleum Products, Inc., 588 F.2d 24, 27 (2d Cir.1978), cert. denied, 440 U.S. 960, 99 S.Ct. 1502, 59 L.Ed.2d 773 (1979). Indeed, lack of subject matter jurisdiction may be asserted at any time by the parties or the court, sua sponte, prior to, during, or after trial, even at the appellate level. Clark v. Paul Gray, Inc., 306 U.S. 583, 59 S.Ct. 744, 83 L.Ed. 1001 (1939); 5A Wright & Miller, § 1350 at 202. Litigants cannot waive subject matter jurisdiction by express consent, conduct, or estoppel. Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 702, 102 S.Ct. 2099, 2104, 72 L.Ed.2d 492 (1982); 13 Wright & Miller, § 3522 at 66–67.[2]

 Applying these rules, the court proceeds to determine whether the Willses' action was filed within the 45–day period set forth in the UAPA. In making this inquiry, the court notes that the parties disagree on how the 45–day period is to be calculated under the UAPA. First, they dispute whether the deadline for the filing period is to be measured from the date the administrative decision is mailed by the agency, or from the date the decision is received by the plaintiffs. Second, they contest whether the running of the period is triggered by the issuing of the initial agency decision or the corrected decision in this case.

As to the first issue, the Willses contend that the running of the limitations period is triggered by the date of receipt of the administrative decision. Using the date of receipt of the corrected decision, the Willses argue that they timely filed within the 45–day period. Specifically, the Willses proffer that they received the administrative hearing officer's corrected decision by mail on September 29, 1990. They proceeded to file this action on November 10, 1990, 42 days from the date that they received the corrected decision. Using this method of calculation,

the Willses conclude that the action was timely filed under the 45–day statute of limitations period. The court disagrees.

Section 4–183(c) states:

Within forty five days after mailing of the final decision under section 4–180, or if there is no mailing, within forty five days after personal delivery of the final decision under said section, a person appealing as provided in this section shall serve a copy of the appeal on the agency that rendered the final decision ... and file the appeal with the clerk of the superior court....

C.G.S. Section 4–183(c) (emphasis added). The statute, on its face, contemplates that the 45–day limitations period within which a plaintiff may appeal an administrative decision is triggered by the mailing of the final decision.

This construction, moreover, finds further support in the case law. See Rogers v. Commission on Human Rights and Opportunities, 195 Conn. 543, 547, 489 A.2d 368 (1985) ("right to appeal from an administrative decision is triggered by the 'mailing of ... notice of the final decision of the agency' "); Royce v. Freedom of Information Commission, 177 Conn. 584, 586, 418 A.2d 939 (1979) (date to be used as starting point for determining issue of whether requisite timeliness features of § 4–183 were complied with is the date of mailing of final agency decision); Hubbard v. Department of Income Maintenance, 38 Conn.Sup. 538, 453 A.2d 782, 783–84 (1982) ("If an appeal is from a final agency decision, the petition must be filed within forty-five days after mailing of the notice of final decision [and] [t]he limitation period thus [is] triggered ... by the mailing of the notice of the final decision....."). Accordingly, the statute of limitations period in this case runs from the date that the final decision was mailed not the date that the Willses' received that decision.[3] The parties also disagree as

2. The court notes that its ruling today is dispositive of its jurisdiction to hear IDEA claims brought against all named defendants in this action, not only the Waterbury defendants.

3. The court acknowledges that its endorsement ruling previously denying Waterbury's motion to dismiss was based on the belief that the receipt, rather than the mailing, triggered the statute of

limitations period. Hence, the court found, as the Willses contended, that their complaint was timely filed. After reconsideration of the issue, however, the court agrees with Waterbury that it erred in its implicit finding that receipt rather than mailing triggered the applicable statute of limitations period. Accordingly, the court stands corrected.

to the precise date on which the final decision was actually mailed in this case. Specifically, they disagree, over *which* agency decision, the *initial* decision issued and mailed on September 16, 1990, or the *corrected* decision issued and mailed on September 23, 1990, constitutes the "final decision" that triggers the running of the limitations period. The Willses argue for the latter while the defendants contend the former controls.

The court, however, need not resolve this issue as the Willses' IDEA claims are untimely under either date in this case. The parties agree that the corrected decision was mailed on September 23, 1990. Adopting the September 23rd mailing date of the *corrected* decision, the date urged by the Willses, the forty-fifth day after the mailing would fall on Saturday, November 7, 1990. Adjusting this date to the next business day, the 45-day period yields a filing deadline in this case of Monday, November 9, 1990. The Willses, however, did not file their complaint until Tuesday, November 10, 1990, the following day. Accordingly, the Willses' filing of this action runs afoul of the 45-day statute of limitations period as set forth under the UAPA.

### 3. Retroactivity

■ Finally, the Willses argue that even if the 45-day limitations period of § 4-183(c) renders their IDEA claims untimely, the court should not apply that statute of limitations period retroactively in this case. The Willses contend that in light of the ruling in *Flavin* that a § 1415(e)(2) action filed 111 days after the filing of an administrative agency's decision was not untimely, retroactive application of the 45-day period to their case contravenes basic principles of equity and fairness. The court disagrees.

The retroactive application of judicial decisions "is overwhelmingly the norm...." *James B. Beam Distilling Co. v. Georgia,* — U.S. —, —, 111 S.Ct. 2439, 2443, 115 L.Ed.2d 481 (1991). Courts have, however, recognized that the interests of equity and basic fairness sometimes point in favor of a strictly prospective application. Indeed, strict prospective application is especially appropriate in situations where the court's deci-

sion "displaces a principle of law on which reliance may reasonably have been placed, and where prospectivity is on balance warranted by its effect in the operation of the new rule and by the inequities that might otherwise result from retroactive application." *Id.* at —, 111 S.Ct. at 2445; *see also Chevron Oil v. Huson,* 404 U.S. 97, 106-107, 92 S.Ct. 349, 355, 30 L.Ed.2d 296 (1971). Thus, a decision of the court which overrules clearly established precedent which the parties had reasonably relied upon in deciding when to file suit presents a compelling case for strict prospective application. This, however, is not such a case.

In their memorandum, the Willses hint that they relied on *Flavin* in preparing their IDEA claims for this action. When pressed by the court on the extent of their reliance at oral argument, however, counsel for the Willses, while obviously aware of *Flavin*'s rejection of the 45-day period in IDEA actions, stopped short of representing that the Willses expressly relied on *Flavin* in deciding when to file this action. Rather, the Willses appear to rely on *Flavin* primarily to justify, *ex post,* the untimely filing of this action. In light of their admission that the decision to file on November 10, 1992, was not actually predicated on *Flavin,* the court finds the type of reliance that might justify a strict prospective application of the 45-day period notably absent in this case. *See Ashland Oil, Inc. v. Caryl,* 497 U.S. 916, 920 n. *, 110 S.Ct. 3202, 3205 n. *, 111 L.Ed.2d 734 (1990); *Stanulonis v. Marzec,* 649 F.Supp. 1536, 1541 (D.Conn.1986).

Second, the court notes that even if the Willses had genuinely relied on *Flavin*'s rejection of the 45-day statute of limitations period, such reliance, by itself, does not necessarily entitle them to prospective application in this case. In *Chevron Oil v. Huson,* the United States Supreme Court noted that a court's decision to limit its application of new law prospectively depends substantially on whether the application of that provision would overrule clear past precedent on which the litigants were entitled to rely. *Chevron Oil,* 404 U.S. at 106-107, 92 S.Ct. at 355; *see also Goodman v. Lukens Steel Co.,* 482 U.S. 656, 662, 107 S.Ct. 2617, 2621, 96 L.Ed.2d 572

(1986). While it is true that *Flavin* considered and rejected the 45–day statute of limitations period, *Flavin* failed to establish a clear, definitive limitations period for IDEA claims brought in Connecticut. In light of *Flavin*'s silence on an express limitations period for IDEA actions, *Flavin* falls short of the kind of clear, definitive precedent that a party would be entitled to rely upon for determining the filing deadline in a case such as this one. *See Goodman v. Lukens Steel Co.*, 482 U.S. 656, 662–63, 107 S.Ct. 2617, 2621–22, 96 L.Ed.2d 572 (1986); *Bow School Dist.*, 750 F.Supp. at 550.

Finally, the court notes that the Willses were notified that they had 45 days in which to file an action challenging the hearing officer's final administrative decision under the IDEA. In light of the fact that the Willses had adequate notice that the 45–day limitations period applied in their case, they cannot, and do not, contend that they were unaware of the 45–day time period in which to file their IDEA claims. Accordingly, the court is compelled to apply the 45–day period in this case and the IDEA claims must therefore be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), Fed. R.Civ.P.

## B. *Section 504 Claims*

In addition to the IDEA claims, the Willses also allege violations of Section 504 of the Rehabilitation Act of 1973, codified as 29 U.S.C. § 794. In their motion, defendants seek to dismiss not only the IDEA claims but the entire action.

As a preliminary matter, the court notes that the basis for Waterbury's attack on the Section 504 claims is unclear. To the extent that Waterbury seeks to dismiss those claims by inviting the court to apply the 45–day statute of limitations period to the Section 504 claims as well as those brought under the IDEA, the court declines.

Section 504 is designed to protect the physically and mentally disabled from suffering discrimination based on physical disability at the hands of those who receive federal

funds. *See Sanders v. Marquette Public Schools*, 561 F.Supp. 1361, 1369 (W.D.Mich. 1983); 29 U.S.C. § 794(a). As was the case with the IDEA, Section 504 does not provide an express statute of limitations. In contrast to IDEA claims, however, the applicable statute of limitations for Section 504 claims is settled law in this district. *See, e.g., Wallace v. Town of Stratford*, 674 F.Supp. 67, 71 (D.Conn.1986). *Wallace* applied a three-year statute of limitations period in actions brought pursuant to Section 504. The Court reasoned that since discrimination actions based on disability closely resemble other civil rights cases, the court should apply the three-year statute of limitations applicable to civil rights actions filed in Connecticut. *Id.*[4] The Second Circuit, moreover, has expressed general approval of the adoption of multi-year statutes of limitations periods in Section 504 actions filed throughout the circuit. *See Fleming v. New York University*, 865 F.2d 478, 481–82 n. 1 (2d Cir.1989); *Williams v. Walsh*, 558 F.2d 667, 670 n. 3 (2d Cir.1977).

Clearly, the Willses' Section 504 claims were timely filed under the statute of limitations period applicable in this case. As noted above, the Willses filed their action in federal court on November 10, 1992, challenging the educational opportunities afforded Erika for the 1990–1991 and 1991–1992 school years. Under any analysis, such a filing would be well within the three years from the time the cause of action accrued in this case. Accordingly, the Willses filed their Section 504 claims within the allotted time period.

At oral argument, however, Waterbury appears to contest more than the timeliness of the Section 504 claims *per se*. Rather, Waterbury argues that the Willses raised the Section 504 claims solely to circumvent the complete dismissal of an action brought exclusively under the IDEA. In short, Waterbury appears to challenge the Section 504 claims on their merits rather than on jurisdictional grounds.

Although it offers no view on whether the Section 504 claims fail to state a claim under

---

4. The three-year statute of limitations period for civil rights actions and Section 504 actions in this district is derived from C.G.S. § 52–577, which generally applies to all actions founded upon a tort.

126

Rule 12(b)(6), Fed.R.Civ.P., the court notes that any attack on the substantive sufficiency of the 504 claims is irrelevant to the jurisdictional challenge here. *See Exchange Nat'l Bank,* 544 F.2d at 1130–1131. Waterbury predicates its motion to dismiss exclusively on jurisdictional grounds pursuant to Rule 12(b)(1). Any challenge to the merits of the 504 claims, therefore, is premature, and should be raised in a motion to dismiss pursuant to Rule 12(b)(6), or a motion for summary judgment pursuant to Rule 56, Fed. R.Civ.P.

Because the court believes it inappropriate to speculate on the merits of the Willses' Section 504 claims at this point in the proceedings, the court's ruling today is limited only to the timeliness of those claims. Accordingly, the court concludes that the Section 504 claims were timely filed under the applicable three-year statute of limitations in this action, and Waterbury's motion to dismiss those claims for lack of subject matter jurisdiction is denied.

## CONCLUSION

For the reasons stated above, Waterbury's motion for reconsideration [Filing No. 11] is GRANTED. After reconsideration, the court VACATES its earlier ruling denying Waterbury's motion to dismiss pursuant to Rule 12(b)(1), Fed.R.Civ.P. Waterbury's motion to dismiss for lack of subject matter jurisdiction [Filing No. 3] is GRANTED as to all claims brought pursuant to the IDEA, 20 U.S.C. § 1400 *et seq.* and those claims are dismissed as to *all* named defendants. Waterbury's motion is DENIED as to all claims brought pursuant to § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794.

SO ORDERED.